UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CURTIS MIDDLEBROOKS,

               Petitioner,                        **No. 05-CV-0004(VEB)**
    -vs-                                              **DECISION AND ORDER**

JAMES T. CONWAY,

               Respondent.
_____

**I.      Introduction**

*Pro se* petitioner Curtis Middlebrooks ("Middlebrooks" or "petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that his conviction on one count of first degree assault (N.Y. Penal Law § 120.10(3)) was unconstitutionally obtained. The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

**II.     Factual Background and Procedural History**

The conviction here at issue stems from an incident that occurred at the apartment of Maleaka Wilson ("Wilson"), one of Middlebrooks' girlfriends and the mother of his son. Apparently, Wilson discovered that Middlebrooks was spending time with another of his girlfriends. Angered at this, Wilson set fire to a pile of several articles of Middlebrooks clothing at her apartment. Later, when Middlebrooks came over to Wilson's apartment, they quarreled. Middlebrooks stated that he was "going to burn her like she had burned his clothes." He advanced upon her, backing her into a corner, whereupon he doused her clothing (which was on her person) with nail polish remover, and tossed two lit matches on her. Wilson started to roll around on the floor in an attempt to extinguish the flames. Middlebrooks came to her aid with a

1

blanket. Wilson survived the attack, but sustained serious injuries.

Middlebrooks elected to forego a jury trial and had a bench trial in Supreme Court for Erie County (Rossetti, J.). Middlebrooks was found guilty of first degree assault and was sentenced to the maximum sentence possible, a twenty-five-year determinate term.

On direct appeal, Middlebrooks' appellate counsel raised six issues: (1) defendant's inculpatory statements made to the police should have been suppressed because they were obtained in violation of his right to counsel, since he was represented on unrelated pending drug charges; (2) the trial court erred in precluding cross-examination of the victim regarding her psychiatric history; (3) the prosecution's expert witness presented testimony which lacked a sufficient foundation and should not have been admitted because the trial court failed to conduct a *Frye* hearing; (4) the prosecution committed a *Brady* violation by failing to timely disclose a plea agreement it had made with the victim, who was Middlebrooks' co-defendant in the pending drug case; (5) defendant was denied his statutory right to a "speedy trial" under C.P.L. § 330.30(1)(a); and (6) the verdict was against the weight of the evidence. The Appellate Division, Fourth Department, unanimously affirmed his conviction on December 30, 2002. *People v. Middlebrooks*, 300 A.D.2d 1142 (App. Div. 4th Dept. 2002). In his leave application, appellate counsel did not include the weight-of-the-evidence claim or the Confrontation Clause claim alleging the improper limitation on cross-examination of the victim. The New York Court of Appeals denied leave to appeal on March 27, 2003. Middlebrooks also sought a writ of *certiorari* from the United States Supreme Court, which was denied on April 4, 2005.

Middlebrooks then collaterally attacked his conviction in state court in a variety of motions. On May 12, 2004, Middlebrooks brought a *coram nobis* application alleging that

appellate counsel had been ineffective for, among other things, failing to argue that the trial court erroneously failed to refer to the burden of proof when it announced the verdict. This was denied by the Appellate Division in a summary order. *People v. Middlebrooks*, 8 A.D.3d 1133 (App. Div. 4th Dept. 2004). The New York Court of Appeals denied leave to appeal on October 5, 2004. *People v. Middlebrooks*, 3 N.Y.3d 741 (N.Y. 2004).

Middlebrooks instituted a state-law habeas corpus petition in Wyoming County Court, again alleging that the trial court had erred in announcing its verdict. This was denied on procedural grounds in a memorandum decision and order on March 15, 2005. Middlebrooks did not seek review from the Appellate Division but instead proceeded directly to the New York Court of Appeals, which denied leave to appeal on procedural grounds on March 27, 2007. *People ex rel. Middlebrooks v. Conway*, 8 N.Y.3d 907 (N.Y. 2007).

Middlebrooks filed a motion pursuant to C.P.L. § 440.20 in Erie County Court seeking to set aside his sentence, which was denied on May 31, 2005. The Appellate Division denied leave to appeal on August 17, 2007.

In 2005, while he still had motions pending in state court, Middlebrooks filed his federal habeas petition in this court. The form petition he submitted did not contain any grounds for relief. (Docket No. 1). After respondent filed an answer and memorandum of law addressing issues that Middlebrooks could be raising, the Court (Foschio, M.J.) required Middlebrooks to file an amended petition setting forth the factual and legal bases for his claims and identifying which of these claims had been exhausted.

The somewhat convoluted procedural history of this case is succinctly explained by Judge Foschio in the most recent order filed (Docket 27). There, Judge Foschio directed

3

Middlebrooks to submit a second amended petition, and authorized the inclusion of two new grounds for relief not originally raised in the first amended petition. (Docket No. 27). Middlebrooks has filed a second amended petition which contains six grounds: (1) when announcing the verdict, the trial court failed to state on the record whether the prosecution had proven the elements of the crime charged beyond a reasonable doubt; (2) New York State violated his rights under the Fourteenth Amendment by failing to afford petitioner a remedy, besides a direct appeal, to challenge a constitutional violation occurring at trial; (3) the trial court violated his Confrontation Clause rights by restricting his cross-examination of the victim about her psychiatric history; (4) appellate counsel rendered ineffective assistance; (5) he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466, because the trial court relied on facts not found by a jury, other than his prior conviction, to enhance his sentence; and (6) the prosecution committed a *Brady* violation by failing to timely disclose a plea agreement made with the victim in a pending drug case. As respondent points out, Ground Six alleging the *Brady* claim was not raised in the first amended petition and was not covered by Judge Foschio's most recent order. Respondent argues that for these reasons, the *Brady* claim should not be addressed by this Court. Respondent has, however, addressed the merits of that claim and argues that it, like the other five, does not warrant habeas relief.

    For the reasons that follow, the petition is denied.

**III.**    **Analysis of the Claims Raised in the Second Amended Petition**

    **A.**    **Ground One: The trial court failed to apply the correct burden of proof, as demonstrated by the fact that when announcing the verdict, the trial court failed to state on the record whether the prosecution had proven the elements of the crime charged "beyond a reasonable doubt."**

Middlebrooks contends that the trial court erroneously failed to state on the record whether the prosecution had proven the elements of the crime charged "beyond a reasonable doubt," thereby indicating that the court had failed to apply the correct burden of proof. Middlebrooks relies principally upon a New York state decision from an intermediate appellate court, *People v. Cuozzo*, 199 A.D.2d 966 (App. Div. 4th Dept. 1993), to support this claim. However, it is well established that under 28 U.S.C. § 2254(a), federal habeas relief is available to a state prisoner *only* when he or she is in custody in violation of the Constitution, laws, or treaties of the United States. There Supreme Court has held many times that habeas relief does not lie for mere errors of state law. *E.g.*, *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). Middlebrooks has not pointed to any Federal constitutional law that requires a trial court, when announcing its verdict after a bench trial, to refer to specific findings and the legal standard applied. *See* Respondent's Memorandum of Law ("Resp't Mem.") at 8. This alone requires dismissal of Ground One.

Moreover, Middlebrooks has not demonstrated a violation of New York state law. In *People v. Cuozzo*, the Appellate Division held that reversal of defendant's conviction was required because "the record reflect[ed] that the [trial] court relied upon an erroneous standard regarding the burden of proof when, immediately before announcing its guilty verdict in this bench trial, the court stated that '[t]here was strong, clear and convincing evidence introduced by the People.'" *People v. Cuozzo*, 199 A.D.2d at 967. The Appellate Division went on to note that "[t]he record contain[ed] no indication that the court, in discussing the law applicable to the case, relied upon the correct standard regarding the burden of proof[,]" and "[t]hus, the court's error effectively diminished the People's burden of proof[,]" *id.* (citing *Sullivan v Louisiana*, 508 U.S.

5

275, 281 (1993) (holding that the denial of the right to a "verdict of guilt beyond a reasonable doubt . . . with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error'" to which harmless error analysis does not apply); *Cage v. Louisiana*, 498 U.S. 39 (1990)).

There are a number of deficiencies in this claim. First, in this Court's opinion, *People v. Cuozzo* does not stand for the proposition urged by Middlebrooks, that a trial court is required to make certain factual or legal findings, or announce the burden of proof it applied, when it announces its verdict in a bench trial. Rather, the issue in *People v. Cuozzo* was that it appeared that the trial court had applied the "clear and convincing" standard of proof applicable to civil trials in the defendant's criminal trial. This is evidenced by the Appellate Division's citation to *Sullivan v. Louisiana* and *Cage v. Louisiana*, which stand for the notion that the proper burden of proof in a criminal trial is "beyond a reasonable doubt" and the denial of such a verdict is a structural, fundamental error. In *People v. Cuozzo*, the Appellate Division found, the record affirmatively indicated that the trial judge had not found the defendant guilty "beyond a reasonable doubt" but instead found him guilty based on "clear and convincing evidence." Here, there is no such indication that the trial judge applied a diminished standard of proof to the evidence. He did not describe the quantum of proof adduced by the prosecution, as the trial judge had in *People v. Cuozzo*. Nor did he make any specific factual or legal findings on the record, but Middlebrooks has cited to no authority that this was necessary as a matter of state or federal law. *See People v. Carter*, 63 N.Y.2d 530, 539 (N.Y. 1984) ("Moreover, the Trial Judge is no more required to state the factual basis for his verdict than is a jury[.]") (citing *(People v. Shufford*, 97 A.D.2d 777, 778 (App. Div. 1983)). Respondent points out that there were multiple references to

the "reasonable doubt" standard during trial, such as during the prosecutor's opening statement, defense counsel's opening statement, the charge conference, and the summations. *See* T.98, 100, 644-45, 648-49, 656, 658-59, 661, 667, 677, 684. Thus, Middlebrooks cannot convincingly argue that the parties or the judge were unaware of the proper standard of proof to be applied during his criminal trial.

Middlebrooks is correct that when Justice Rossetti announced his verdict, he simply stated that he found Middlebrooks guilty of first degree assault. However, Middlebrooks has pointed to no state or federal law that required him to do otherwise. Middlebrooks has provided nothing but speculation that his verdict was not based upon the proper "reasonable doubt" standard. Ground One is denied because it does not state a cognizable federal claim and is, in any event, without merit.

> **B.    Ground Two: New York State must provide him a legal forum in which to raise constitutional violations that occurred at trial but were not raised on direct appeal.**

By this claim, Middlebrooks seems to be attacking the restrictions placed upon defendants in New York State by means of C.P.L. § 440.10(2)(c), which provides that the trial court "*must* deny a motion to vacate a judgment [brought pursuant to C.P.L. § 440.10(1)] when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him . . . ." N.Y. CRIM. PROC. LAW § 440.10(2)(c) (emphasis supplied). Several things should be noted.

7

First and foremost, the Supreme Court has clearly established that "the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors." *Evitts v. Lucey*, 469 U.S. 387, 393 (1985) (citing *McKane v. Durston*, 153 U.S. 684 (1894)). In other words, a criminal defendant is not constitutionally entitled to a direct appeal as of right; New York provides such an appeal as a matter of its state law. If the Federal Constitution does not require even one direct appeal, then *a fortiori*, a second appeal to raise trial errors not raised on direct appeal is not required.

Furthermore, although Middlebrooks complains about the restrictions contained in C.P.L. § 440.10(2)(c), I note that Section 440.10 provides a remedy to defendants where none before existed. Prior to its enactment, "New York had no statute for collateral attack on a judgment of conviction" and "[d]efendants who had run the gamut of direct appeal and exhausted common law remedies were limited to federal habeas corpus (28 U.S.C. 2254) as a remedy for violation of their constitutional rights." Preiser, Practice Commentaries to N.Y. Crim. Proc. Law § 440.10. Thus, C.P.L. § 440.10 created a collateral avenue for attacking criminal convictions. However, as a deterrent to using C.P.L. § 440.10 as a second direct appeal, the New York Legislature added paragraph (c) of C.P.L. § 440.10(2), which was designed to prevent use of the motion to vacate as a substitute for appeal. *See People v. Cooks*, 67 N.Y.2d 100, 103 (N.Y. 1986). In light of the Supreme Court's clearly established precedent, Middlebrooks has no basis for arguing that the New York Legislature runs afoul of the Constitution by placing such a restriction on collateral attacks by criminal defendants. Ground Two is denied because it does not state a cognizable federal habeas claim and is, in any event, without merit.

## C. Ground Three: The trial court violated petitioner's Sixth Amendment right to confrontation by limiting his cross-examination of the victim.

Middlebrooks contends that the trial court erred when it sustained the prosecutor's objection to defense counsel's inquiry as to whether the victim had ever been treated in a hospital setting "for any type of mental or psychological disorder." On direct appeal, the Appellate Division dismissed the claim because defense counsel had failed to make an offer of proof as to the existence of psychological or mental health issues in the victim's history. Respondent argues that Ground Three is unexhausted because it was not included in Middlebrooks' application for leave to appeal to the New York Court of Appeals. Respondent states that the claim should be deemed exhausted because he has no further avenues in which to raise this claim in the state courts; Middlebrooks has used the one direct appeal to which he is entitled and C.P.L. § 440.10(2)(c) prevent the claim from being raised in a collateral motion to vacate. Thus, respondent argues, the procedural rules giving rise to the constructive exhaustion create a procedural default of the claim, barring it from further review here unless Middlebrooks could show cause for the default and prejudice attributable thereto, or that he is factually innocent of the charges against him such that a fundamental miscarriage of justice would occur should this Court decline to hear the claim.

Even if the Court were to overlook the procedural default, habeas relief would not be warranted because the holding by the Appellate Division was not an unreasonable application of clearly established Supreme Court precedent regarding the Confrontation Clause of the Sixth Amendment, which through the Fourteenth Amendment applies to the states, *see Pointer v. Texas*, 380 U.S. 400 (1965).

In rejecting this claim, the Appellate Division held as follows:

> Contrary to defendant's further contention, Supreme Court did not err in precluding cross-examination of the complainant regarding her psychiatric history. A defendant has a constitutional right to confront the witnesses against him through cross-examination. With respect to the psychiatric condition of a witness, "the defense is entitled to show that the witness's capacity to perceive and recall events was impaired by that condition" (*People v. Baranek*, 287 A.D.2d 74, 78, 733 N.Y.S.2d 704; see People v. Brown, 121 A.D.2d 732, 504 N.Y.S.2d 154, lv. denied 68 N.Y.2d 810, 507 N.Y.S.2d 1027, 499 N.E.2d 876). Here, however, defendant failed to make the requisite offer of proof that the complainant "had such a history, or that such evidence would bear upon her credibility or otherwise be relevant" (*People v. Byers*, 254 A.D.2d 494, 494, 679 N.Y.S.2d 838, lv. denied 93 N.Y.2d 1043, 697 N.Y.S.2d 875, 720 N.E.2d 95; *cf. People v. Knowell*, 127 A.D.2d 794, 794-795, 512 N.Y.S.2d 190).

*People v. Middlebrooks*, 300 A.D.2d 1142, 1143, 752 N.Y.S.2d 759, 761 (App. Div. 4th Dept. 2002).

The Confrontation Clause guarantees the defendant in a criminal prosecution the right to confront the witnesses against him, which "'means more than being allowed to confront the witness physically,' for '"[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*."'" *Jones v. Berry*, 880 F.2d 670, 673-74 (2d Cir. 1989) (quoting *Davis v. Alaska*, 415 U.S. 308, 315-1 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed.1940) (emphasis in original)) and citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)). "The Confrontation Clause is not violated merely because the petitioner is prevented from cross-examining a prosecution witness about matters relevant to the witness's general credibility." *Young v. McGinnis*, No. 98-CV-281 (JBW), 2006 WL 463507, at *21 (E.D.N.Y. Feb. 24, 2006) (E.D.N.Y. 2006) (citing *United States v. Cardillo*, 316 F.2d 606, 611 (2d Cir.) (prosecution witness's refusal to answer questions about prior criminal activity did not violate Confrontation Clause, where questions "were purely collateral for they related solely to his credibility as a witness" ), *cert. denied*, 375 U.S. 822 (1963); *Dunbar v. Harris*, 612 F.2d

690, 693-94 (2d Cir.1979) (same)).

The Second Circuit has held that "[a]ll erroneous rulings that improperly restrict cross-examination under state or federal rules of evidence do not necessarily implicate the Confrontation Clause." *Harper v. Kelly*, 916 F.2d 54, 57 (2d Cir.1990). As an initial matter, however, Middlebrooks has not shown that the trial court erred by requiring an offer of proof and an explanation as to its relevancy before allowing cross-examination on the topic at issue to proceed. The Supreme Court and the Second Circuit have explained many times that "the Confrontation Clause does not prohibit the trial judge from setting any limits whatever on the cross-examination of a prosecution witness for potential bias[,]" *Jones v. Berry*, 880 F.2d 670, 673 (2d Cir.1989), and the trial court retains "wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, . . . interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. at 679. *See, e.g.*, *United States v. Rahme*, 813 F.2d 31, 37 (2d Cir. 1987) (scope and extent of cross-examination are within sound discretion of trial court); *United States v. Pedroza*, 750 F.2d 187, 195 (2d Cir. 1984) (same). "Since the trial court has discretion to limit cross-examination, a party whose prospective questioning is threatened with curtailment should make *all reasonable efforts* to alert the court to the relevance and importance of the proposed questions[,]" *Jones v. Berry*, 880 F.2d at 673, and "[u]nless clearly barred by the trial court, the party should make an offer of proof on the record[,]" *id.* (emphasis supplied). Here, the Appellate Division found, Middlebrooks "failed to make the requisite offer of proof that the complainant had such a history [of psychiatric illness], or that such evidence would bear upon her credibility or otherwise be relevant[.]" *People v. Middlebrooks*, 300 A.D.2d at 1143 (internal quotation marks omitted). Federal courts

in this Circuit addressing similar issues of curtailed cross-examinations have declined to grant habeas relief, even where the witness was shown to have a history of psychiatric or mental health issues (unlike the witness in Middlebrooks' case). *See*, *e.g.*, *Drake v. Woods*, 547 F. Supp.2d 253, 266 (S.D.N.Y. 2008) ("Drake claims that by refusing to conduct an in camera inspection of Witness A's psychiatric records and refusing to permit cross-examination regarding her mental health history, the trial court deprived him of his Sixth Amendment right of confrontation. The trial judge's decision to deny these requests served 'legitimate interests in the criminal trial process,' and was not 'arbitrary or disproportionate' to those purposes.") (quoting *Roberts v. Scully*, 875 F. Supp.182, 189 (S.D.N.Y. 1995) (quoting *United States v. Almonte*, 956 F.2d 27, 30 (2d Cir.1992)) and citing N.Y. CIV. PROC. LAW & R. §§ 4504, 4507 for proposition that "[p]rotecting the confidentiality of a witness's psychiatric records serves legitimate interests in the criminal trial process."). In addition, the Second Circuit has held that a trial court's limitation of questioning regarding psychiatric history did not violate confrontation rights where there was no evidence that witness had difficulties in memory or perception and witness was able to perform job duties without incident. . *United States v. Crowley*, 318 F.3d 401, 419 (2d Cir.2003); *see also United States v. Sasso*, 59 F.3d 341, 348 (2d Cir. 1995) (holding that refusal to admit evidence of psychiatric condition did not violate confrontation rights where there was no evidence that it produced difficulties in memory or perception, and witness was cross-examined about her tendency to overreact and her bias against defendant).

Middlebrooks has not come forward with any clearly established Federal law that the trial court in his case acted outside of the "wide latitude" permitted "to impose reasonable limits on such cross-examination . . . ." *Delaware v. Van Arsdall*, 475 U.S. at 679. Because he has not

shown that the Appellate Division applied federal law in an erroneous or objectively unreasonable manner, habeas relief is not warranted on Ground Three.

> D. **Ground Four: Appellate counsel provided constitutionally ineffective assistance.**

To succeed on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 686 (1984), a petitioner has to show that his lawyer's conduct "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Specifically, a petitioner must show that "(1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) he was prejudiced by counsel's deficient performance." *Id.* The *Strickland* standard applies to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right, as well. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001) (citing *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985)). The issue of prejudice need not be addressed, however, if a petitioner is unable to demonstrate first that his counsel's performance was inadequate. "[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

The two alleged instances of appellate counsel's ineffectiveness before the Court are (1) that appellate counsel failed to argue that the trial court diminished the prosecution's burden of proof, in violation of the Fifth and Fourteenth Amendments, by failing to place on the record the applicable principles of law; (2) that appellate counsel failed to argue that C.P.L. § 260.30

("Jury trial; in what order to proceed")[1] applies to bench trials and the trial court "violated this statutory mandate;" and (3) that appellate counsel failed to argue that "the People's theory was that the defendant intended to commit assault, and no evidence was offered in the alternative or otherwise." The Appellate Division denied petitioner's *coram nobis* application raising these claims without opinion.

None of the omitted issues amounts to a colorable ground for reversal under state or federal law. The first omitted argument has been disposed of elsewhere in this Decision and Order, in Section III.A discussing Middlebrooks' first ground for habeas relief. The second omitted argument is plainly without any factual or legal basis. Likewise, the third omitted argument is baseless. Middlebrooks was indicted under three theories of first degree assault. Under the Penal Law in New York, "[a] person is guilty of assault in the first degree when: 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or 2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable

---

[1] C.P.L. § 260.30 provides that "[a]he order of a jury trial, in general, is as follows:

1. The jury must be selected and sworn. 2. The court must deliver preliminary instructions to the jury. 3. The people must deliver an opening address to the jury. 4. The defendant may deliver an opening address to the jury. 5. The people must offer evidence in support of the indictment. 6. The defendant may offer evidence in his defense. 7. The people may offer evidence in rebuttal of the defense evidence, and the defendant may then offer evidence in rebuttal of the people's rebuttal evidence. The court may in its discretion permit the parties to offer further rebuttal or surrebuttal evidence in this pattern. In the interest of justice, the court may permit either party to offer evidence upon rebuttal which is not technically of a rebuttal nature but more properly a part of the offering party's original case. 8. At the conclusion of the evidence, the defendant may deliver a summation to the jury. 9. The people may then deliver a summation to the jury. 10. The court must then deliver a charge to the jury. 11. The jury must then retire to deliberate and, if possible, render a verdict.

N.Y. Crim. Proc. Law § 260.30.

permanently a member or organ of his body, he causes such injury to such person or to a third person; or 3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person . . . ." N.Y. Penal Law § 120.10(1), (2) and (3). Middlebrooks seems to be stating that there was legally insufficient evidence to establish the *mens rea* of the crime of which he was convicted (reckless assault). It was not unreasonable for the trier of fact to conclude that Middlebrooks was "aware of consciously disregarded a substantial and unjustifiable risk of death" when he tossed a flammable liquid on his girlfriend's clothing, which she was still wearing, and then tossed two lit matches on her. In any event, appellate counsel argued that the verdict was against the weight of the evidence, which requires the reviewing court to employ a standard more favorable to the defendant. Even so, the Appellate Division concluded that the verdict in Middlebrooks' case was not against the weight of the evidence. *People v. Middlebrooks*, 300 A.D.2d at 1143, 752 N.Y.S.2d at 761)(citing *People v. Bleakley*, 69 N.Y.2d 490, 495 (N.Y. 1987)).

Because Middlebrooks has failed to show that there is any possibility that the outcome of his appeal would have been different had these non-meritorious arguments been included, he clearly was not prejudiced by appellate counsel's performance. Accordingly, his ineffective assistance claim must fail, and Ground Four is dismissed.

### D. Ground Five: Petitioner's sentencing as a second violent felony offender violated his Sixth Amendment rights.

Middlebrooks contends that he was unconstitutionally sentenced beyond the statutorily allowed maximum term for his crime which, according to him, is ten (10) years. Middlebrooks asserts that the trial court "us[ed] facts other than his prior convictions." Amended Petition, He

15

bases this contention on the trial court's statement, at sentencing, that it had looked at his background and record. *See* Transcript of Sentencing Hearing at 15. When Middlebrooks raised this by means of a motion to set aside the sentence under C.P.L. § 440.20, the motion court denied relief because the twenty-five-year sentence imposed was not greater than the maximum term authorized under N.Y. Penal Law § 70.04, which applies to second violent felony offenders. Middlebrooks does not appear to be arguing that he did not have the requisite felony convictions to warrant according him second violent felony offender status. *See* N.Y. PENAL LAW § 70.04(3)(a). When the sentencing court has found that a person is a second violent felony offender "the court must impose a determinate sentence of imprisonment which shall be in whole or half years . . . in accordance with the provisions of [Penal Law § 70.04(3)]." N.Y. PENAL LAW § 70.04(2). Under the version of the Penal Law applicable to Middlebrooks, "[f]or a class B felony, the term must be at least ten years and must not exceed twenty-five years . . . ." N.Y. Penal Law § 70.03(a). Thus, Middlebrooks' argument is based on faulty assumption–that the maximum term possible for his conviction of a Class B felony was ten years, when in fact, it was twenty-five. Although Middlebrooks received the maximum sentence that could be imposed, it nevertheless was within statutory limits and does not present a constitutional question reviewable on federal habeas. *See White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1991); *Fielding v. LeFevre*, 548 F.2d 1102, 1109 (2d Cir.1977) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). Ground Five does not warrant habeas relief and is denied.

  **F.  Ground Six: The prosecution violated its disclosure obligations under *Brady v. Maryland* by belatedly disclosing the victim's plea agreement.**

On direct appeal, the Appellate Division concluded,

> We agree with defendant that the People committed a *Brady*[2] violation by failing to disclose a plea agreement with the complainant, who as previously noted herein was the codefendant with respect to a drug charge against defendant. Pursuant to that plea agreement, the complainant promised "continued cooperation with [the District Attorney's Office] in the prosecution of [defendant]." The *Brady* violation does not require reversal, however, because defendant received the *Brady* material as part of the *Rosario*[3] material provided to him and was given a meaningful opportunity to use the exculpatory evidence to cross-examine the complainant[.]"

*People v. Middlebrooks*, 300 A.D.2d at 1143 (citation omitted).

The *Rosario* rule, codified at C.P.L. § 240.45,[4] is a New York State law discovery rule, and "requires generally that the People provide defense counsel with all pretrial statements of prosecution witnesses." *People v. Ranghelle*, 69 N.Y.2d 56, 57 (N.Y. 1986). "The standards used to determine whether a Brady or a Rosario violation has occurred are different, since '*Brady* . . . involves a constitutional principle . . . [while] the *Rosario* rule is based upon 'policy considerations' and 'a right sense of justice', not constitutional mandates or guarantees . . . ." *People v. Howard*, 127 A.D.2d 109, 117, 513 N.Y.S.2d 973 (App. Div. 1st Dept.1987)). The

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] *People v. Rosario*, 9 N.Y.2d 286 (N.Y. 1961), *rearg. denied*, 9 N.Y.2d 908 (N.Y. 1961), *cert. denied*, 368 U.S. 866 (1964), *rearg. denied*,14 N.Y.2d 876 (N.Y. 1964), *rearg. denied*, 15 N.Y.2d 765 (N.Y. 1965).

[4] "After the jury has been sworn and before the prosecutor's opening address, or in the case of a single judge trial after commencement and before submission of evidence, the prosecutor shall, subject to a protective order, make available to the defendant:

(a) Any written or recorded statement, including any testimony before a grand jury and an examination videotaped pursuant to section 190.32 of this chapter, made by a person whom the prosecutor intends to call as a witness at trial, and which relates to the subject matter of the witness's testimony;

(b) A record of judgment of conviction of a witness the people intend to call at trial if the record of conviction is known by the prosecutor to exist;

(c) The existence of any pending criminal action against a witness the people intend to call at trial, if the pending criminal action is known by the prosecutor to exist."

N.Y. CRIM. PROC. LAW § 240.45(1).

*Brady* rule derives from constitutional due process principles and requires the prosecution to disclose evidence favorable to the defendant even though there has been no request by defendant, and encompasses impeachment evidence as well as exculpatory evidence. *E.g.*, *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). A *Brady* violation has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Id.* at 281-82.

Neither the Supreme Court nor the Second Circuit has ever read into *Brady* a specific requirement as to the timing of disclosure. As the Second Circuit observed in *Leka v. Portuondo*, 257 F.3d 89 (2d Cir. 2001), "[i]t is not feasible or desirable to specify the extent or timing of disclosure *Brady* and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made." 257 F.3d at 100. Thus, the Second Circuit concluded, "disclosure prior to trial is not mandated." *Id.*

Here, the Appellate Division held that there was no *Brady* violation warranting reversal because the prosecution's disclosure of the victim's plea agreement, prior to her cross-examination, gave the defense a "meaningful opportunity" to use the information. The Second Circuit has explained that "*Brady* information must be disclosed . . . in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial" and "[t]hus, the Government must make disclosures in sufficient time that the defendant will have a reasonable opportunity to act upon the information efficaciously." *United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (citing *Leka v. Portuondo*, 257 F.3d at 100). The Appellate Division's dismissal of

Middlebrooks' *Brady* claim was clearly a reasonable application of the relevant Federal law. Accordingly, Ground Six does not warrant habeas relief.

## IV.     Conclusion

For the foregoing reasons, Curtis Middlebrooks' request for a writ of habeas corpus is denied and the petition is dismissed. In addition, his request for appointment of counsel is denied as moot. Because Middlebrooks has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ *Victor E. Bianchini*
_____
VICTOR E. BIANCHINI
United States Magistrate Judge

Dated: March 30, 2009
        Buffalo, New York.